# DAVID G. FRAZIER, A MINOR, ETC., ET AL.

## V.

# CITY OF NORFOLK

Record No. 841357

November 25, 1987

Present: All the Justices

*Mona B. Schapiro (Richard H. Matthews; Steingold, Glanzer & Matthews*, on briefs), for appellants.

*George J. Dancigers (Mary G. Commander; Heilig, McKenry & Fraim*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this tort action against a municipality, we consider whether a particular city-owned building is a "recreational facility," within the meaning of Code § 15.1-291, and, if so, whether the plaintiff failed as a matter of law to establish a prima facie case of gross negligence.

The statute in issue provides,

"No city or town which shall operate any bathing beach, swimming pool, park, playground or other recreational facility shall be liable in any civil action or proceeding for damages resulting from any injury to the person or property of any person caused by any act or omission constituting simple or ordinary negligence on the part of any officer or agent of such city or town in the maintenance or operation of any such recreational facility. Every such city or town shall, however, be liable in damages for the gross or wanton negligence of any of its officers or agents in the maintenance or operation of any such recreational facility.

"The immunity created by this section is hereby conferred upon counties in addition to, and not limiting on, other immunity existing at common law or by statute."

In 1979, appellant David G. Frazier, a minor, fell while attending a religious convention at Chrysler Hall in Norfolk. Frazier and his parents (collectively, the plaintiff) brought this action against appellee the City of Norfolk seeking recovery for personal injuries and associated medical expenses.

After a pretrial hearing, the court below ruled that Chrysler Hall was a "recreational facility" under the foregoing statute. Accordingly, the court required the plaintiff to establish that the city was guilty of gross negligence, in support of his allegations that the city permitted a dangerous condition to exist on the premises. Subsequently, at the conclusion of the plaintiff's evidence in a jury trial, the court sustained the city's motion to strike and ruled the plaintiff had failed to prove that the city was grossly negligent. We awarded the plaintiff this appeal from the June 1984 order in which the court entered judgment for the city.

The threshold issue, of course, deals with the utilization of the building. The testimony shows that among the activities conducted in Chrysler Hall were, "Broadway shows, three school musical groups a year[,] . . . [travelogue], Norfolk forum, many beauty contests, Nutcracker Suite which includes a lot of children, . . . religious groups frequently, whether they are professional or church groups, [speeches, and] a broad cross section of events." A symphony orchestra performed regularly in the building.

At the time of the plaintiff's injury, the city had leased the building to a church group for the purpose of holding a convention over a two-day period. The lease provided that the city retained control over the management and operation of the premises.

The plaintiff contends the trial court erred in ruling that Chrysler Hall was a recreational facility within the meaning of § 15.1-291. He argues that the statute should apply only "to such things as parks, playgrounds and pools and not an auditorium rented for profit." The plaintiff contends that Chrysler Hall should have been treated "merely as a building owned by the defendant and used as a part of the defendant's proprietary function" and that simple or ordinary negligence should have been the standard of proof.

He says that the statute should be limited to those facilities maintained for the public's free use which involve "highly participatory" activities such as swimming pools or parks, where horseback riding and biking occur, and should not apply to buildings operated by the municipality for profit, such as auditoriums,

theatres, or music halls, where more sedentary activities occur. The plaintiff contends that the activities conducted in the latter facilities "are normally highly supervised and are not generally associated with the dangers involved in participatory activities."

Because the city is engaged in a profit-making function, the plaintiff argues, it is in a position similar to a privately owned business, should bear the responsibilities of a business, and "should not be afforded the luxury of a limitation of its liability under § 15.1-291." Also, the plaintiff relies on techniques of statutory construction which provide that where general language follows specific words, the meaning of the general may be confined to matters of the same kind as the specific. *See Martin* v. *Commonwealth*, 224 Va. 298, 301-02, 295 S.E.2d 890, 892-93 (1982). We reject the plaintiff's contentions.

The statute under consideration was enacted in 1940 and since then has undergone only a few minor changes not relevant here. The legislative title was, "An ACT to amend the Code of Virginia by adding thereto a new section numbered 3032-a, limiting the civil liability on the part of cities and towns in the maintenance or operation of recreational facilities to cases of gross or wanton negligence." Acts 1940, ch. 153. The statute was enacted shortly after this Court decided *Hoggard* v. *City of Richmond*, 172 Va. 145, 200 S.E. 610 (1939). There, in a 4-3 decision imposing tort liability upon a city, the Court held that a municipality acted in a ministerial and not governmental capacity when operating a bathing and swimming pool, although it did not derive any pecuniary advantage from the activity. 172 Va. at 157, 200 S.E.2d at 615.

▪ Considering the title of the act along with its substantive provisions, we conclude that the General Assembly intended to limit the civil liability of municipalities in the maintenance and operation of *any* recreational facilities to cases of gross or wanton negligence. That is what the legislature said in plain terms. Contrary to the plaintiff's argument, there is no necessity to resort to maxims of statutory construction or to employ other devices to ascertain legislative intent. And, the statute's application is not conditioned on profit, free public use, or "highly participatory" activity.

▪ This statute is clear and unambiguous. Thus, general rules for construction of statutory language of doubtful meaning do not apply. *Brown* v. *Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). Under these circumstances, there is no need for interpre-

tation by the court; the plain meaning and intent of the enactment will be ascribed to it. *Id.*

The adjective "recreational" and the noun "recreation" have settled meanings which are too plain to be misunderstood. The words are not difficult to comprehend. "Recreational" means "of or relating to recreation." Webster's Third New International Dictionary 1899. "Recreation" is commonly understood as "a means of getting diversion or entertainment." *Id.*

■ The record plainly shows that Chrysler Hall is used as a place for citizens' diversion and entertainment. It is a place, like a bathing beach, swimming pool, park, or playground, where members of the public are entertained and diverted, either by their own activities or by the activities of others. Obviously, stage shows, forums, the symphony, beauty contests, travelogues, the ballet, and many meetings and speeches are forms of recreation. Therefore, the use of Chrysler Hall for these functions qualifies the building as a "recreational facility" within the meaning of the statute, and the trial court correctly so held.

Turning to the issue of gross negligence, we will summarize the pertinent evidence in the light most favorable to the plaintiff, in accord with settled rules of appellate review. The injured party, age 13, was attending the convention at Chrysler Hall and was asked to perform with a church choir by playing the drums. He took his place on a stool at a drum set which previously had been placed at the rear of the orchestra pit.

The pit was in front of the main stage and was a platform that could be positioned level with or below the stage. At the time, the pit had been lowered so that a gap existed between the rear of the pit and the front of the stage. No barriers or railings were in place on the rear perimeter of the pit platform.

During the performance, the plaintiff dropped a drumstick. The stick fell behind him and, when the performance ended, he reached to the rear "blindly," groping for the stick. In the process, the plaintiff leaned backward on the stool and lost his balance. The stool "went over" and the plaintiff was injured when he fell from the pit platform through the gap approximately 18 feet into the basement of the building.

The plaintiff introduced expert testimony that the city was in violation of its own building code because railings were not in place on the pit platform. The evidence further showed that the city possessed barriers specifically designed to provide protection

against falls through the gap created on the stage side of the pit when the pit was in a lowered position. Also, the plaintiff produced evidence that, two years prior to this incident, a child six years of age fell from the orchestra pit into the basement when pit barriers were in place.

The plaintiff contends the trial court erred in ruling that the evidence was insufficient as a matter of law to establish gross negligence. He argues that a jury issue was created by the following facts: The city retained the right to control the leased premises and hence had the duty to eliminate the dangerous condition created by the position of the orchestra pit; the city was in violation of its building code for failure to have barriers in place around the pit; barriers available for safety purposes were not in use in spite of the fact that a child had fallen there two years earlier; and the city knew children would be present at the convention thereby creating a higher duty of care than would have been required for adults. We disagree with the plaintiff's argument.

Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury. Nevertheless, when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule. *Community Bus Co.* v. *Windley*, 224 Va. 687, 689, 299 S.E.2d 367, 369 (1983).

"Gross negligence" is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. "It is a heedless and palpable violation of legal duty respecting the rights of others." *Town of Big Stone Gap* v. *Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945). Gross negligence amounts to the absence of slight diligence, or the want of even scant care. *Id.*

We hold the trial court correctly ruled that the plaintiff failed to establish a prima facie case of gross negligence. The city's failure to install protective devices or to post warnings for children at a platform edge which was open and obvious amounts, at the most, to ordinary negligence and a failure to exercise reasonable care. Such acts of omission do not rise to that degree of egregious conduct which can be classified as a heedless, palpable violation of rights showing an utter disregard of prudence.

For these reasons, the judgment of the trial court will be

*Affirmed.*

THOMAS, J., with whom STEPHENSON, J., joins, concurring in part and dissenting in part.

I concur with all of the majority opinion except the conclusion that the plaintiff failed to raise a jury question as to gross negligence.

Plaintiff's evidence was struck at the close of plaintiff's case. In order to decide whether a jury question existed with regard to gross negligence, this Court was bound to consider the evidence and all reasonable inferences arising therefrom in the light most favorable to the plaintiff. Once the evidence is thus considered, the question becomes whether reasonable men could differ as to the existence of gross negligence on the part of the City.

In my opinion, the facts, viewed as described above, make clear that a jury question existed. The legal test for gross negligence is whether the defendant acted in a way that amounted to "a heedless and palpable violation of legal duty respecting the rights of others." *Town of Big Stone Gap* v. *Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945).

Here, the City had exclusive control of the facility. It leased to a church organization which it knew would bring children to the facility. A child had previously fallen from the same orchestra pit and sustained injuries despite the use of specially designed guardrails. Though armed with the knowledge that a child could fall from the orchestra pit even with guardrails in place, the City failed to install the guardrails prior to the instant accident. In this case, the evidence was that had the guardrails been installed, the fall would have been prevented. Moreover, use of the guardrails was required by the City's own building code. The distance from the floor of the orchestra pit to the concrete floor beneath the orchestra pit was eighteen feet. Thus, the City knew that the drop was dangerous. Yet it gave no warning to the child who was sitting in the orchestra pit and it failed to take the simple precautions which would have prevented the fall. In my opinion, on this evidence, a jury could believe that the City acted in "heedless and palpable violation" of this infant's rights.