42 F.3d 1386
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
STEWART TITLE GUARANTY COMPANY, Plaintiff-Appellant,
v.
LINOWES AND BLOCHER; L & B Title Company; William M.
Hoffman, Jr., Defendants-Appellees.
 No. 93-1950.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1994.
Decided Dec. 12, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-92-1718-A)
 James Mitchell Kearney, MILES & STOCKBRIDGE, Baltimore, MD, for Appellant.
 Roger E. Warin, STEPTOE & JOHNSON, Washington, DC, for Appellees.
 Jefferson V. Wright, J. Mark Coulson, MILES & STOCKBRIDGE, Baltimore, MD, for Appellant.
 
 
 1
 Harry Lee, Diane Hollenshead Copes, STEPTOE & JOHNSON, Washington, DC, for appellees.
 
 
 2
 E.D.Va.
 
 
 3
 AFFIRMED.
 
 
 4
 Before WILLIAMS, Circuit Judge, PHILLIPS, Senior Circuit Judge, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 5
 In this diversity action, Stewart Title Guaranty Company ("Stewart Title") appeals the district court's judgment as a matter of law dismissing its breach of contract and legal malpractice claims against the defendants Linowes and Blocher ("Linowes"), L & B Title Company ("L & B"), and William M. Hoffman, Jr. ("Hoffman"). We affirm.
 
 
 6
 * Stewart Title is a large, Texas-based title insurance company. Linowes is a Maryland-based law firm with a substantial real estate practice in that state and in Washington, D.C. Hoffman is a partner in Linowes. In 1988, Stewart Title signed a "Retainer Agreement" ("the Agreement") with Linowes. Under the Agreement, the law firm agreed to act on behalf of Stewart Title for the purpose of issuing title insurance policies in Maryland and D.C. Hoffman signed the Agreement on behalf of Linowes.
 
 
 7
 The Agreement was not clear about the capacity in which Linowes was retained. On the one hand, the Agreement referred to Linowes as "ATTORNEY" throughout and stated that "[t]he relationship between STEWART and ATTORNEY under this Agreement is that of Attorney and Client, and the responsibility and liability of each party to the other shall be governed by the law relating to Attorney and Client." On the other hand, the Agreement also stated that "STEWART retains ATTORNEY as its limited agent only for the purposes of issuing title policies." J.A. 386 (emphasis added).
 
 
 8
 The other clause of the Agreement pertinent to this action concerned the standard of care Linowes was obligated to meet:
 
 
 9
 "[T]he ATTORNEY shall be liable to STEWART for any loss which STEWART may sustain or incur under any policy issued pursuant to this Agreement, occasioned by any fraud or gross negligence of ATTORNEY".
 
 
 10
 (emphasis added). The parties agree that Linowes bargained for, and Stewart Title agreed to, the addition of the word "gross" to modify "negligence."
 
 
 11
 In 1989, a year after the Agreement was signed, Linowes decided to expand its activities as an agent for various title insurance companies into the Commonwealth of Virginia. Because Virginia law mandates that title insurance policies can only be issued by title companies, Linowes created a wholly-owned title company subsidiary, L & B Title. Hoffman was made vice-president of L & B.
 
 
 12
 This action arose out of a real estate transaction occurring in late August 1989. At that time, Porten-Sullivan, a corporate client of Linowes, sought to obtain a $10,000,000 loan from Ameribanc Savings Bank ("Ameribanc") to develop a tract of property in Virginia as the "Stone River Project." Before the project could go forward it was necessary to find a title insurer. The first title insurer approached, LTIC, balked when Ameribanc insisted upon mechanic's lien coverage that included both "hard" (labor and materials) and "soft" (i.e., architect's fees, interest reserves, marketing) costs. At that point, Hoffman was approached by a Linowes attorney who represented Porten-Sullivan and asked if Stewart Title would provide title insurance.
 
 
 13
 Hoffman spoke with two employees of Stewart Title, one in the local D.C. office (Chris Naughten), one in the Houston office (Jim Gosdin). Both gave approval for mechanic's lien coverage of both "hard" and "soft" expenses and indicated that Stewart Title would be willing to provide title insurance on the project. However, unbeknownst to them at the time, Naughten and Gosdin disagreed on another crucial issue: whether mechanic's lien coverage would extend to work done after the effective date of the title insurance policy.[1]
 
 
 14
 The disagreement developed as follows: After getting final approval from Gosdin in Houston, defendant Hoffman asked that the local agent, Naughten, send over a copy of Stewart Title's Virginia mechanic's lien endorsement form for inclusion in the title policy. Naughten faxed the defendants such a form with a cover letter labeling it "VA Mech. Lien End." and "Per our discussion." Later that day, Gosdin faxed Hoffman a written confirmation attaching the LTIC mechanic's lien form which Naughten had earlier sent to him (for purposes of discussing the hard and soft costs issue). Gosdin's cover letter stated: "OK to use attached as changed." The two forms were essentially the same but they differed on the crucial period of coverage that the parties had not discussed. The Stewart Title form provided by Naughten covered mechanic's liens relating to past and future construction, whereas the LTIC form sent by Gosdin covered only liens arising out of construction existing as of the date of the policy. Hoffman used the Stewart Title form provided by Naughten.
 
 
 15
 After Hoffman's issuance of a Stewart Title insurance policy for Porten-Sullivan, Porten-Sullivan experienced financial difficulties and filed for bankruptcy. Various mechanics liens were filed against the Stone River project in early 1990. These included liens amounting to approximately $650,000 that were perfected after the effective date of the Stewart Title policies and that by terms of the endorsement at issue were covered by the policies. Ameribanc, Porten-Sullivan's major creditor, eventually called on Stewart Title to defend against and pay these liens. Stewart Title ultimately spent over $650,000 defending against, and settling, the lien claims.
 
 
 16
 In December 1992, Stewart Title filed this diversity action against Linowes, L & B Title, and Hoffman in the United States District Court for the Eastern District of Virginia. The complaint alleged breach of contract (i.e., the Agreement) and, in the alternative, tort-based legal malpractice claims.
 
 
 17
 At the close of Stewart Title's case, the defendants moved for judgment as a matter of law. They contended that Stewart Title's legal malpractice claim should be dismissed because the plaintiff had failed to establish the standard of care for a reasonably prudent lawyer in Virginia. According to the defendants, such evidence is required in Virginia before a legal malpractice claim can be considered by a jury. Second, the defendants argued that with respect to the contract breach claim, the Agreement clearly established a "gross" negligence standard of care, which was not met by the evidence adduced by Stewart Title.[2] Finally, the defendants raised the defense of contributory negligence, specifically, that the Stewart Title form which created the problem was supplied by one of Stewart Title's own employees.
 
 
 18
 In response, Stewart Title argued that despite the Agreement's use of a "gross" negligence standard of care, the defendants' contractual liability should be determined under a mere negligence standard because the state's Code of Professional Conduct requires at least that level of care by lawyers. Stewart Title argued further that even if the appropriate contractual standard were gross negligence, there was sufficient evidence to support such a finding, essentially that Hoffman's undisputed failure to have compared more closely the two faxed forms and realized that the Stewart Title form should not have been used could be found to constitute gross negligence.
 
 
 19
 The district court granted the defendants' motion and dismissed the action. It did so on alternative legal/factual grounds. The primary ground was that, given the Agreement's existence, Stewart Title's claims should be considered as grounded in contract and "only" in contract; that, so considered, the standard of care allegedly breached was that of gross negligence; and that the evidence was not sufficient to support a finding of gross negligence in breach of that contractually-imposed duty. J.A. 381-83. Alternatively the court ruled that if, however, the claim were assessed as one of legal malpractice, with liability based on mere negligence, the evidence was insufficient to support a finding of attorney negligence because of the lack of expert testimony that an attorney had violated the relevant professional standard. J.A. 383.
 
 
 20
 This appeal followed.
 
 II
 
 21
 Our review of the district court's grant of judgment as a matter of law is de novo. Parker v. Prudential Ins. Co., 900 F.2d 772, 776 (4th Cir.1990). We consider in turn the alternative grounds upon which the court's ruling was based.
 
 
 22
 * Assuming, as did the district court, that the defendants' liability in the matter at issue could only be based on a finding of gross negligence as specified in the Stewart Title-Linowes agency agreement we agree with the court's conclusion that Stewart Title's evidence failed as a matter of law to permit such a finding. As the district court correctly defined "gross negligence" under Virginia law, it is "that degree of negligence which shows such indifference to others as constitutes an utter disregard of caution amounting to a complete neglect of the safety of another's property. It is such negligence as would shock fairminded people, although it is something less than willful recklessness." J.A. 382. See Frazier v. Norfolk, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987).
 
 
 23
 Applying that standard, we agree with the district court that Stewart Title's evidence of Hoffman's conduct was insufficient as a matter of law to support a finding of gross negligence. The form used by Hoffman was one supplied to him by a Stewart Title employee, an attorney of Stewart Title's local office with whom Hoffman previ ously had dealt. The other form came to him later as a somewhat modified version of the form used by another title insurance company that had, to his knowledge, earlier declined to provide coverage. In retrospect, it developed that Stewart Title was ill-served by Hoffman's use of its own form as supplied, with indicated approval, by one of its own employees. However, although Hoffman's failure to compare the forms closely and, upon noting their discrepancies, to solicit clarification may arguably have been found to constitute a lack of ordinary care, we agree with the district court that it could not properly be found an "utter disregard of prudence," hence gross negligence.
 
 
 24
 We further agree with the district court's rejection, as a matter of law, of Stewart Title's argument that public policy forbade application of the contractually imposed gross negligence standard. This argument, belatedly advanced, was that the Virginia Code of Professional Responsibility applicable to lawyers established, as public policy, an ordinary negligence standard that contracting parties could not vary. Rejecting the argument, the district court stated that it was "unwilling at this stage of this case" to hold the contractually-agreed-upon standard was void as violative of the Code of Professional Conduct. J.A. 381.
 
 
 25
 We think that this potentially important issue of state law is better reserved for another day and a case in which its resolution would be dispositive. It is not here, for we think the argument may properly be rejected on an alternative ground advanced by defendants: that the contractual duty which bound Hoffman and Linowes bound them, not as attorneys, but as limited commercial agents and that the Code of Professional Responsibility could not therefore affect the lesser duty contractually undertaken by them. Under Virginia law, Hoffman could not act as a lawyer in the matters at issue, not being licensed to practice in that state. Furthermore, the Agreement in fact specifically stated that Linowes and its attorneys were to act as "limited agent[s] only for the purpose of issuing title policies." No legal services were requested by, or provided to, Stewart Title by any of the defendants pursuant to the agency relationship created by the Agreement. Moreover, Defendants' compensation by Stewart Title for services rendered in performance of the Agreement was in the form of commissions based upon premiums, not legal fees. Finally, the poli cies issued pursuant to the Agreement were issued by L & B Title, a stock company which was created specifically to comply with state law which did not permit issuance of such policies by lawyers or law firms.
 
 
 26
 On this basis, we conclude that the Virginia Code of Professional Responsibility applicable to the professional conduct of lawyers could have no legal effect upon the contractual duties assumed by defendants under the Agreement.
 
 B
 
 27
 We also agree with the district court's stated basis for finding the evidence insufficient to support a finding of legal malpractice by Hoffman and Linowes, were it considered that such a tort claim could be pursued as an alternative to the breach of contract claim. The stated basis was the lack of adequate evidence to prove the requisite breach of legal duty under Virginia law.
 
 
 28
 Under that law, a plaintiff may recover for legal malpractice only upon proof of "(1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of the plaintiff's loss." Byrd v. Martin, Hopkins, Lemon & Carter, P.C., 564 F.Supp. 1425, 1427 (W.D.Va.1983), aff'd 740 F.2d 961 (4th Cir.1984), quoted in Sampang v. Detrick, 826 F.Supp. 174, 176 (W.D.Va.1993), appeal dismissed, 25 F.3d 1040 (4th Cir.1994); see also Allied Prods., Inc. v. Duesterdick, 217 Va. 763, 764-65, 232 S.E.2d 774, 775 (1977).
 
 
 29
 As a general rule, in order to prove the second element, a plaintiff must introduce expert testimony to establish what constitutes a "reasonable duty." Geiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir.1990) ("In most legal malpractice cases, 'expert testimony is necessary to establish the standard of care since only an attorney can competently testify to whether the defendant comported to the prevailing legal standard.' ") (quoting 2 R. Mallen & J. Smith, Legal Malpractice Sec. 27.15). This is the case in Virginia. Sampang, 826 F.Supp. at 177 (holding that because "[n]egligence is not self-proving," expert testimony is required in legal malpractice cases); see also Raines v. Lutz, 231 Va. 110, 111, 341 S.E.2d 194, 195 (1986) (professional malprac tice cases generally require that "the appropriate standard of care, as well as any departure from that standard, must be proved by expert testimony"). There is a narrow exception when the breach is flagrant and straightforward, see, e.g., Wagenmann v. Adams, 829 F.2d 196, 218-20 (1st Cir.1987).
 
 
 30
 We agree with the district court's ruling that Stewart Title's proffered expert testimony on the appropriate standard did not meet the basic requirement, nor invoke the exception. The district court properly struck the testimony of Stewart Title's proffered expert, Samuel Gillman, because of Gillman's inability to articulate an accurate definition of gross negligence. The only other evidence related to the appropriate duty owed by Hoffman and Linowes in their capacity as attorneys was the testimony of Gosdin, the attorney in Stewart Title's Houston office with whom Hoffman dealt in the transaction at issue. His testimony, proffered as that of an expert on the appropriate standard of care owed by agents rather than attorneys in such matters, completely failed to identify the special standard of care for attorneys or the way in which it was breached here. The district court therefore properly concluded that, for the failure of proof on this critical element of a legal malpractice claim under Virginia law, the claim should be dismissed.
 
 AFFIRMED
 
 
 [1]
 Under Virginia law, mechanic's liens have priority over the security interests of banks and other secured lenders, even when the mechanic's liens are established subsequent to the recording of the lender's security interests. Va.Code Ann. Sec. 43-21 (Michie 1994). In consequence, insurers usually limit coverage to liens arising from materials or labor supplied before, but not after, the effective date of a title insurance policy
 
 
 [2]
 As noted above, the Agreement was between Stewart Title and Linowes. The contested policy, however, was issued by L & B Title. During the course of the trial, the district court held that L & B and Linowes "are one and the same", and thus L & B was covered under Stewart Title's Agreement (including its "gross" negligence provision) with Linowes. Stewart Title did not object to, and does not now seek to challenge this ruling