**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHANNON LEA BOWERS, a minor, by
and through her parent and next
friend, Gary M. Bowers; GARY M.
BOWERS; MARTHA C. BOWERS, his
wife, individually,
<u>Plaintiffs-Appellants,</u>

No. 96-1374

v.

ROBERT D. MARTIN; POWERMATIC, a
division of DeVlieg-Bullard,
Incorporated; HTC PRODUCTS,
INCORPORATED,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-94-671-R)

Argued: April 9, 1997

Decided: June 23, 1997

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge,
and DUFFY, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Duffy wrote the opinion, in
which Chief Judge Wilkinson and Judge Widener joined.

_____

**COUNSEL**

**ARGUED:** Sean Calvin Workowski, COLLINS & WORKOWSKI, Covington, Virginia, for Appellants. William Norman Watkins, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellee Martin; D. Stan Barnhill, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia for Appellee Powermatic; Peter Duane Vieth, WOOTEN & HART, P.C., Roanoke, Virginia, for Appellee HTC. **ON BRIEF:** Michael M. Collins, COLLINS & WORKOWSKI, Covington, Virginia, for Appellants. Jonathan P. Jester, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellee Martin; David B. Hart, WOOTEN & HART, P.C., Roanoke, Virginia, for Appellee HTC.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

DUFFY, District Judge:

Shannon Lee Bowers ("Bowers") appeals the orders of the district court granting summary judgment in favor of defendants Robert Martin ("Martin"), Powermatic, Inc. ("Powermatic"), and HTC Products, Inc. ("HTC"), on her claims of negligence. For the reasons stated below, the orders of the district court are affirmed.

I.

During the later part of the 1993 school year, Bowers, age sixteen (16), was enrolled in an agricultural science class taught by Martin at Alleghany High School ("Alleghany"). The class consisted of approximately twenty (20) students and involved instruction on general woodworking techniques and the use of certain stationary power tools. This litigation arises from injuries Bowers sustained to her hand while working with a table saw in the class on April 1, 1993.

2

Powermatic manufactured the table saw that Bowers was operating at the time of her injury. The table saw had been sold to Nelson-Roanoke Corporation ("Nelson-Roanoke") in late 1985 and shipped to Alleghany. J.A. at 356-59. Nelson-Roanoke ordered table saw model 1660010 from Powermatic which came with a combination blade guard, splitter, and anti-kickback pawls ("combination guard"). The Powermatic manual which came with the table saw advised the user who wished to perform dado, rabbet, and similar cuts on the table saw with the combination guard to use other safety devices to insure safe operation.[1] J.A. at 358. At the time of purchase, as it does today, Powermatic also offered another guard, known as an overarm guard, which was better suited for dado and rabbet cuts.[2] Martin had the Powermatic manual in his possession prior to Bowers's injury. J.A. at 225.

In 1992, Alleghany replaced the combination guard with a "Brett-Guard" made by HTC. Unlike the combination guard, the Brett-Guard was designed to accommodate dado and rabbet cuts. However, Martin installed the Brett-Guard on the right side of the table instead of the left as mandated by the operations manual.[3] After the installation of the Brett-Guard, Martin began instructing students on how to use the table saw to perform dado and rabbet cuts. Martin stressed the necessity of having the Brett-Guard over the saw blade during operation and warned of "kickback," whereby the wood is thrust back toward

---

[1] Dado, rabbet, and similar cuts involve cutting grooves into a piece of wood rather than through the wood completely. At the time of the accident, Bowers was attempting to make a rabbet cut into wood on which she was working by passing the wood back and forth across the saw blade. J. A. at 54-55.

[2] The trade name of Powermatic's overarm guard is the "Safety Flex."

[3] The operations manual included a bold-print warning:

> THE ANTI-KICKBACK DEVICE IS PRIMARILY FOR RIPPING OPERATIONS AND IS EFFECTIVE ONLY WHEN THE BRETT-GUARD IS MOUNTED ON THE LEFT SIDE OF THE TABLE SAW AND ONLY WHEN THE ANTI-KICKBACK DEVICE IS PROPERLY ENGAGED ON THE WOOD BEING CUT. The anti-kickback device is inoperative when the Brett-Guard is used in the rear or right positions.

J.A. at 269.

the operator possibly resulting in the operator's hand coming into contact with the saw blade. J.A. at 177, 179, 211.

After her first use of the saw under Martin's instruction, and despite being instructed by Martin to the contrary, **4** Bowers operated the table saw without the Brett-Guard over the blade. J.A. at 130-131. On April 1, 1993, Bowers proceeded to use the table saw to perform a rabbet cut without placing the Brett-Guard over the blade and without using any other safety device to protect her from the exposed blade. J.A. at 72-73. Subsequently, Bowers suffered injuries to her hand when a kickback occurred.

On August 25, 1994, Bowers and her parents filed a complaint against Martin, Powermatic, and HTC alleging negligence and breach of warranty claims. Bowers withdrew her breach of warranty claims during a hearing before the district court on the summary judgment motions of Powermatic and HTC on January 24, 1996. The Bowers are presently before this court appealing the district court's rulings granting defendants' motions for summary judgment as to the negligence claims.

II.

The granting of a motion for summary judgment is reviewed de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317

_____

**4** Bowers had used the table saw on numerous other occasions and had been instructed on the importance of having the Brett-Guard over the saw blade during any woodcutting activity. J.A. at 72. Bowers had also read the warnings on the Brett-Guard itself instructing the user to operate the saw only with the guard in place. J.A. at 133, 141-145.

4

(1986). All evidence should be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The "obligation of the nonmoving party is `particularly strong when the nonmoving party bears the burden of proof.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990)), cert. denied, 116 S. Ct. 190 (1995). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Celotex, 477 U.S. at 327.

III.

It is well settled that the substantive law to be applied in a diversity case is that of the state legislature and the state's highest court. Erie R.R. Co. v. Thompkins, 304 U.S. 64, 78 (1938). Thus, this court must apply the law as set forth by the Virginia legislature and the Virginia Supreme Court.

A.

Under Virginia law, the doctrine of sovereign immunity protects public school teachers from liability for injuries sustained by a student where the allegations amount to simple negligence or an improvident exercise of teacher discretion. Lentz v. Morris , 372 S.E.2d 608, 610 (Va. 1988). Accordingly, the teacher's actions must constitute gross negligence to become actionable at law.

Bowers alleges the following as evidence of Martin's gross negligence: (1) his improper installation of the Brett-Guard; (2) his failure to heed the warnings contained in the Brett-Guard operations manual and placed on the Brett-Guard itself; (3) his inadequate instructions

5

to the students on the proper manner in which to make cuts, specifically the rabbet cut; (4) allowing students to use the saw to cut curved wood which Martin knew could increase the danger of kickback; and (5) his careless procedure for checking the students' set up and operation of the table saw.

The Virginia Supreme Court has defined gross negligence as "that degree of negligence which shows utter disregard of prudence amounting to complete neglect of safety of another." Frazier v. City of Norfolk, 362 S.E.2d 688, 691 (Va. 1987) (citations omitted) (action brought against the City of Norfolk for injuries sustained by a thirteen (13) year-old child who fell from a platform in a municipal auditorium). The court went on to say that "[g]ross negligence amounts to the absence of slight diligence, or want of even scant care." Id. The conduct must constitute "such a degree of negligence as would shock fair minded [people] although something less than wilful recklessness." Meagher v. Johnson, 389 S.E.2d 310, 311 (Va. 1990) (citation omitted).

Bowers' allegations in regard to Martin's installation of the Brett-Guard and his alleged inattention to the warnings in the operations manual and on the guard are irrelevant to her negligence claim because at the time of Bowers' injury, she was not using the Brett-Guard nor had she asked Martin for assistance in placing the Brett-Guard over the saw blade. J.A. at 72-73. There is no evidence in the record that the manner in which Martin installed the Brett-Guard prevented Bowers from using it as other students had.

With respect to Martin's classroom instruction and observation of his students, it is clear that he required all students to read the manufacturer's warnings in the manual and on the saw itself. It is also clear that he instructed his students, including Bowers, to always place the Brett-Guard over the saw blade when making a rabbet cut. J.A. at 71-73. Also, concerning curved wood, Martin encouraged students to cut the wood before the curve. J.A. at 241. During the early part of the school year, Martin demonstrated to the students the proper way to use the saw. J.A. at 81. Martin's actions clearly do not constitute an "utter disregard of prudence amounting to complete neglect of the safety of [Bowers]." Frazier, 362 S.E.2d at 691. At worst, Martin's conduct was simple negligence.

6

B.

Bowers alleges that Powermatic's failure to include the Safety Flex guard as part of the saw constitutes negligence. While this guard was available for sale in 1985, it was not ordered by the original purchaser, Nelson-Roanoke. Also, the Safety Flex was available when Alleghany decided to replace the original Powermatic guard with the Brett-Guard. Under Virginia law, "`when a customer exercises an option to purchase a product without a safety feature, it is axiomatic that the manufacturer should not be held liable for damages which that safety feature may have prevented.'" Austin v. Clark Equip. Co., 48 F.3d 833, 837 (4th Cir. 1995) (quoting Butler v. Navistar Int'l Transp. Corp., 809 F. Supp. 1202, 1209 (W.D. Va. 1991)). Bowers cannot hold Powermatic liable for the decisions of Nelson-Roanoke and Alleghany regarding safety options available with the table saw. Furthermore, the Powermatic combination guard had been removed from the saw before Bowers was a student in Martin's class. Thus, Bowers has no negligence claim against Powermatic.

C.

Bowers' claim against HTC is based on Martin's allegedly improper installation of the Brett-Guard. Bowers admits that Martin instructed the students, including her, to always place the Brett-Guard over the top of the saw blade when making a cut. Nonetheless, Bowers chose to operate the table saw without using the Brett-Guard on the day her injury occurred. Where the nature and the extent of the risk of an action are fully appreciated and that risk is voluntarily incurred, the act constitutes a voluntary assumption of risk. Landes v. Arehart, 183 S.E.2d 127, 129 (Va. 1971) (citation omitted). Bowers voluntarily assumed the risk of using the table saw without the Brett-Guard. Therefore, whether HTC may have been negligent in manufacturing the Brett-Guard is irrelevant because Bowers failed to use the guard at all.

IV.

For the foregoing reasons, the orders of the district court granting summary judgment in favor of all defendants are

AFFIRMED.

7