**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 11-1966**

―――――――――

GEORGE LUTFI,

        Plaintiff - Appellant,

    v.

UNITED STATES OF AMERICA,

        Defendant – Appellee.

―――――――――

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony J. Trenga, District Judge. (1:09-cv-01114-AJT-IDD)

―――――――――

Argued: March 21, 2013        Decided: April 24, 2013

―――――――――

Before GREGORY and THACKER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

―――――――――

Affirmed by unpublished per curiam opinion.

―――――――――

**ARGUED:** Steven Michael Oster, Washington, D.C., for Appellant. Joseph Edward Krill, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this Federal Tort Claims Act ("FTCA") case, Appellant George Lutfi ("Appellant Lutfi") appeals the district court's dismissal of his claim for lack of subject matter jurisdiction.

The underlying dispute arose after Appellant Lutfi injured his arm while visiting the United States Air Force Memorial ("Memorial") in Arlington, Virginia. On appeal, Appellant Lutfi alleges: (1) the district court erroneously granted the United States' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and, instead, the district court should have treated the motion as one for summary judgment under Fed. R. Civ. P. 56; (2) the district court erroneously applied Virginia's recreational land use statute ("RLUS"), which required Appellant Lutfi to establish gross negligence; and (3) in the alternative, the district court erred in concluding that there were no genuine issues of material fact on the issue of gross negligence.

We reject these arguments and hold instead: (1) the district court's reliance on Fed. R. Civ. P. 12(b)(1), though erroneous, was harmless error inasmuch as Appellant Lutfi's substantial rights weren't affected; (2) the district court did not err in applying the RLUS given that Appellant Lutfi was sightseeing while he was visiting the Memorial; and (3) the

district court did not err in concluding there were no genuine issues of material fact on the issue of gross negligence.

Accordingly, we affirm the judgment of the district court.

I.

A.

On Friday, November 17, 2006, Appellant Lutfi and several of his relatives arrived at the Memorial at approximately 8:00 p.m. According to Appellant Lutfi, the purpose of the visit to the Memorial was to "highlight American values" for the benefit of a young relative who was visiting from out of town. See J.A. 1034-35.[1] Neither Appellant Lutfi nor his relatives paid a fee to visit the Memorial or park in the Memorial's parking lot.

The group came in two separate cars and, upon arrival, parked in a section of the parking lot reserved for Memorial visitors. According to Appellant Lutfi, several of the lights in the parking lot were not functioning that evening. Specifically, Appellant Lutfi alleges that the only functioning lights were on the lower end of the parking lot, behind their vehicles and in the opposite direction of the Memorial. He also

---

[1] Citations to the J.A. refer to the Joint Appendix filed by the parties in this appeal.

alleges there were several light poles in the area surrounding their vehicles, but the lights on those poles were not functioning.

Appellant Lutfi and his relatives visited the Memorial for approximately twenty minutes before returning to their vehicles. Appellant Lutfi alleges that, while walking through the parking lot on his way back to the vehicles, he stepped on a wire hoop that was hidden beneath a patch of leaves on the ground. According to Appellant Lutfi, the hoop encircled his ankles, causing him to fall to the ground and fracture his arm.

B.

As a result of this injury, Appellant Lutfi brought multiple actions in state and federal court against various defendants. Specifically, on November 17, 2008, Appellant Lutfi, proceeding pro se, filed an action in Arlington County Circuit Court against three private federal contractors. However, on July 27, 2010, Appellant Lutfi filed a motion seeking voluntary dismissal of that lawsuit, which the state court granted.

On October 2, 2009, Appellant Lutfi, again proceeding pro se, brought the present action against the United States in the United States District Court for the Eastern District of Virginia. In his initial compliant, Appellant Lutfi generally alleged that the United States negligently failed to warn or

4

protect visitors against the dangerous conditions that were allegedly present in the parking lot, namely the presence of construction debris and the existence of inadequate lighting. On July 26, 2010, Appellant Lutfi, this time acting through counsel, filed an amended complaint ("Amended Complaint"), reincorporating the original allegations against the United States and adding (1) claims against several private contractors, including those named in the original state court action, and (2) a claim that the United States negligently failed to supervise those contractors.[2]

On July 26, 2010, the district court issued its initial scheduling order, which provided that discovery would conclude on December 10, 2010. However, the district court later enlarged this period by two months. Thus, Appellant Lutfi's discovery period expired on February 11, 2011, giving him a total of seven months in which to complete discovery.

On October 8, 2010, the United States filed its first motion to dismiss. In that motion, the United States argued (1) Appellant Lutfi had failed to establish that the United States was liable under Virginia law and, therefore, the district court

---

[2] The Amended Complaint's claims against the independent contractors were all dismissed in separate orders and are not relevant here.

lacked subject matter jurisdiction under the FTCA;[3] (2) the FTCA's independent contractor exception insulated the United States from liability because the United States had delegated the construction and maintenance of the Memorial's parking lot to an independent contractor; and (3) the FTCA's discretionary function exception similarly insulated the United States from liability because the decision to hire an independent contractor was a discretionary function. The district court denied this motion on November 19, 2010, in order to give Appellant Lutfi a "full and fair opportunity to conduct discovery." J.A. 1036-37, n.4. In a separate order also entered that day, the district court enlarged the discovery period by two months. See R. 62.[4]

On February 14, 2011, following the conclusion of the discovery period, the United States filed a motion to dismiss pursuant to Fed. R. Civ. P. 41(b)[5] alleging that Appellant Lutfi had engaged in "litigative misconduct" during discovery

---

[3] As discussed in more detail, infra, the FTCA vests district courts with jurisdiction to hear tort claims asserted against the United States only to the extent that "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

[4] Citations to "R." refer to district court ECF docket entry numbers not included in the Joint Appendix.

[5] Fed. R. Civ. P. 41(b) provides, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."

6

sufficient to warrant involuntary dismissal. R. 188. The magistrate judge heard argument on this motion and, in the ensuing report and recommendation, recommended dismissal. See R. 286, at 21 ("Given Plaintiff's past behavior in response to the Court's orders and instructions, this Court finds that dismissal of this case with prejudice is the only effective sanction.")

While the Rule 41 motion was pending before the district court, the United States filed a renewed motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment. The district court granted the United States' renewed motion to dismiss on April 22, 2011. In so doing, the district court properly noted, under the FTCA, federal courts only possess subject matter jurisdiction over tort claims asserted against the United States to the extent that the United States would have been liable as a private party under the law of the state in which the tort occurred. See J.A. 1033-34 (citing Goldstar (Panama) S.A. v. United States, 967 F.2d 954, 969 (4th Cir. 1992); 28 U.S.C. § 1346(b)).

In determining whether the United States would have been liable to Appellant Lutfi under Virginia law, the district court first concluded that the RLUS applied to Appellant Lutfi's claims. Under the RLUS, a landowner who makes its property freely available to the public for recreational purposes,

7

including "sightseeing," has no liability except for "gross negligence or willful or malicious failure to guard or warn against a dangerous condition, use, or structure, or activity." Va. Code 29.1-509(B) & (D). Therefore, the district court found the RLUS applicable because (a) the United States did not receive a fee in return for Appellant Lutfi's use of the Memorial and (b) Appellant Lutfi was sightseeing when his injury occurred. Accordingly, the district court concluded Appellant Lutfi must show that the United States was grossly negligent under Virginia law in order to prevail.

The district court then concluded Appellant Lutfi had failed to make such a showing. In so holding, the district court noted, "[u]nder Virginia law, 'gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another' and requires 'a heedless and palpable violation of legal duty respecting the rights of others.'" J.A. 1035 (quoting Frazier v. City of Norfolk, 234 Va. 388, 393 (1987)). Applying this definition to the facts at hand, the district court concluded that, even resolving all disputed facts and drawing all reasonable inferences in Appellant Lutfi's favor, a reasonable jury could not conclude that the United States was grossly negligent under Virginia law. See J.A. 1035-36. Accordingly, the district court granted the United States' motion to dismiss.

8

II.

"We review de novo a district court's dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Taylor v. Kellogg Brown & Root Servs., Inc., 658 F.3d 402, 408 (4th Cir. 2011).

Similarly, we review the district court's grant of summary judgment de novo. Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, a court is required to view all facts and reasonable inferences in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party carries the initial burden to establish the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this burden, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Id. at 324.

Finally, when reviewing the judgment of a district court, we will "disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61; see also 28 U.S.C. § 2111.

9

III.

Pursuant to the doctrine of sovereign immunity, the United States is immune from private civil actions absent an express waiver. See Kerns v. United States, 585 F.3d 187, 193-94 (4th Cir. 2009) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)) ("Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit.") Through the FTCA, Congress expressly waived sovereign immunity for certain tort claims, vesting federal district courts with exclusive jurisdiction over all civil actions brought against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because Appellant Lutfi's alleged injury occurred in Arlington, Virginia, Virginia law governs the merits of this case. Accordingly, the district court possessed subject matter jurisdiction over this matter to the extent that the United States, if a private person, would have been liable to Appellant Lutfi under Virginia law.

A.

Appellant Lutfi first argues that the district court erred in dismissing his claim for lack of subject matter jurisdiction pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure. He bases this argument on our decision in

10

Kerns, wherein we reversed a district court's dismissal of a case for lack of subject matter jurisdiction and held that, instead, the district court should have "assume[d] jurisdiction and assess[ed] the merits of the claim" in order to give the plaintiff the benefit of the procedural protections of a motion for summary judgment. Kerns, 585 F.3d at 195.

Ordinarily, a defendant may challenge the existence of subject matter jurisdiction in one of two ways: (1) by contending that a complaint fails to allege facts upon which subject matter jurisdiction can be based (a "facial challenge") or (2) by contending that the jurisdictional allegations made in the complaint are not true (a "factual challenge"). See Kerns, 585 F.3d. at 192-93 (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). In a facial challenge, the plaintiff is afforded the same procedural protections as he would be accorded when faced with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Namely, all alleged facts are taken as true and the motion will be denied if the complaint alleges facts that, if proven, would be sufficient to sustain jurisdiction. See id. In a factual challenge, a trial court "may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." Id.

11

This legal framework is normally effective for the resolution of subject matter jurisdiction disputes. However, in cases where the jurisdictional facts are "inextricably intertwined" with those central to the merits of the dispute, this framework falls short. Kerns, 585 F.3d at 193. In such cases, "a trial court should then afford the plaintiff the procedural safeguards — like discovery — that would apply were the plaintiff facing a direct attack on the merits." Id. Accordingly, "[a]s the Supreme Court has held with respect to such situations, a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are clearly immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." Id. (internal quotation marks and alterations omitted).

Thus, Appellant Lutfi contends that, because the jurisdictional and merits facts are inextricably intertwined in this case, the district court erred in dismissing for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Instead, Appellant Lutfi argues that the district court should have assumed jurisdiction and resolved this case on the merits. We agree. There is no dispute that the jurisdictional and merits issues are "inextricably intertwined" in this case, as the question of jurisdiction under the FTCA turns entirely on

12

the question of whether the United States could be liable to Appellant Lutfi under Virginia law. Thus, under <u>Kerns</u>, the district court should have assumed jurisdiction and decided this case on a motion for summary judgment. Accordingly, the district court's dismissal of Appellant Lutfi's claims for lack of subject matter jurisdiction was improper.

However, as the United States correctly argues, this error was harmless.[6] Under the harmless error doctrine, we "must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61; <u>see also</u> 28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment . . . without regard to errors or defects which do not affect the substantial rights of the parties.") An error is harmless if we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error . . . ." <u>Kotteakos v. United States</u>, 328 U.S. 750, 765 (1946); <u>see also</u> <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219 (4th Cir. 1999) (en banc) (formally adopting the <u>Kotteakos</u> harmless error standard for civil cases).

---

[6] The United States also argues Appellant Lutfi waived this procedural argument by failing to raise it below. However, because we conclude the district court's error was harmless, we need not determine whether this argument was, in fact, waived.

Here, we can say with fair assurance that, had the district court assumed jurisdiction and analyzed the United States' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court would have reached the same result.

Notably, Appellant Lutfi's argument that the district court erroneously dismissed this case pursuant to Rule 12(b)(1) is based entirely on our decision in Kerns. However, in Kerns, the court's primary concern was the fact that the plaintiff had not been allowed to conduct discovery and thus, was not afforded "the procedural safeguards . . . that would apply were the plaintiff facing a direct attack on the merits." Kerns, 585 F.3d 193.

In contrast, here, Appellant Lutfi was given seven months to conduct discovery. This includes the five months from the original scheduling order and the additional two months awarded thereafter. Moreover, Appellant Lutfi was, in fact, accorded the procedural safeguards of the summary judgment standard, as the district court resolved all disputed factual matters and drew all reasonable inferences in his favor. See, e.g., J.A. 1034-35 ("For purposes of this motion, the Court accepts as true these characterizations of the purpose and nature of plaintiff's visit to the Memorial, but nevertheless concludes that they do not take his visit outside the scope of the Recreational Use Statute."); J.A. 1035 ("Accepting that

14

testimony as true, there is nothing in the record that establishes how long that condition may have existed before the accident or that the United States was on notice of that condition.") (emphasis supplied). This conclusion is bolstered by the additional facts that: (1) as noted above, the district court initially denied the United States' motion to dismiss for lack of subject matter jurisdiction in order to afford Appellant Lutfi an opportunity to conduct discovery; and (2) the district court's final dismissal arose in the context of a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment.

Accordingly, we can say with fair assurance that the district court's erroneous reliance on Fed. R. Civ. P. 12(b)(1) did not effect its ultimate conclusion that Appellant Lutfi could not establish that the United States was liable to him under Virginia law. Therefore, the district court's error was harmless.

B.

Appellant Lutfi next argues the district court erred in applying the RLUS for two reasons. First, Appellant Lutfi contends that the RLUS only applies to those entities for whom the existence of the RLUS's reduced standard of care was the primary motivation for opening their land to the public and, therefore, the RLUS does not apply to the United States as the

15

United States was otherwise motivated to build the Memorial. Second, Appellant Lutfi contends that the RLUS does not apply because he was not sightseeing during his visit to the Memorial. We reject both arguments.

1.

First, Appellant Lutfi contends that the RLUS only applies to those entities for whom the existence of the RLUS's reduced standard of care was the primary motivation for opening their land to the public. According to Appellant Lutfi, the United States does not fit this description because, he asserts, it likely would have opened the Memorial to the public regardless of whether it would enjoy the protection of the RLUS. Thus, Appellant Lutfi concludes the RLUS does not apply here.

In support of this argument, Appellant Lutfi relies on Piligian v. United States, 642 F. Supp. 193, 195 (D. Mass. 1986) ("[T]he landowner whose liability the legislature sought to limit is the one for whom the existence of the RLUS provides the primary motivation in allowing the public on his land.") However, this reliance is inapposite.

First, Piligian is distinguishable. In Piligian, the plaintiff was injured while sitting on a shopping concourse outside the Pentagon. Just prior to the injury, the plaintiff had taken a free tour of the Pentagon. As a result of the injury, she filed suit against the United States under the FTCA.

16

The United States argued that the RLUS applied because the plaintiff was sightseeing at the time of her injury. However, the Piligian court rejected this argument, concluding instead that the RLUS did not apply because the United States had, in fact, received a fee in exchange for the use of its property.

The Piligian court based this conclusion on the fact that the injury occurred on a shopping concourse located just outside the Pentagon, as opposed to the Pentagon grounds. The shops on this concourse paid royalties to the United States. Accordingly, the Piligian court likened the concourse to a shopping mall and, therefore, concluded that the RLUS did not apply. See Piligian, 642 F. Supp. at 195 ("[T]he concourse area is not unlike any suburban shopping mall, where in addition to the shops, there are areas for relaxing, listening to music, and viewing temporary exhibits, or what have you.")

Here, Piligian is inapplicable because Appellant Lutfi's injury did not occur in a "commercial area" like the one at issue in Pilgian. J.A. 1036. Moreover, even assuming Piliian is analogous, we decline to hold that the existence of the statute's limitation of liability provision must be a landowner's "primary motivation" for opening its land to the public in order for the statute to apply. There is simply nothing in the statute that supports such a requirement. Rather, the only two pre-requisites listed in the statute are

17

(1) the requirement that the landowner not receive a fee in exchange for use of its property and (2) the requirement that the property be used for a "recreational purpose." Because both of these pre-requisites are met in the present case, the RLUS applies.

2.

Appellant Lutfi's second argument against the application of the RLUS is that he was not "sightseeing" at the Memorial but, instead, he went to the Memorial to impart American values on his visiting young relative, which he argues is not "sightseeing."

We first note that neither the statute nor Virginia courts have defined the term "sightseeing" as it is used in the RLUS. Thus, we must give the term its ordinary meaning. Johnson v. Zimmer, 686 F.3d 224, 243 (4th Cir. 2012) ("[W]hen terms used in a statute are undefined, we give them their ordinary meaning[.]"); see also Hamilton v. Lanning, 130 S. Ct. 2464, 2471 (2010). In ascertaining a term's ordinary meaning, both this court and the Supreme Court have relied on the term's dictionary definition. See, e.g., United States v. Gonzales, 520 U.S. 1, 5 (1997); see also N. Carolina ex rel. Cooper v. TVA, 515 F.3d 344, 351 (4th Cir. 2008). Accordingly, we join the district court and adopt the relevant definitions from Webster's Third New International Dictionary. Specifically,

18

that dictionary defines "to sightsee" as "to go about seeing sights of interest" and further defines a "sight" as "a thing regarded as worth seeing." J.A. 1035 (citing Webster's Third New International Dictionary at 2114-15).

We also agree with the district court's conclusion that Appellant Lutfi's visit to the Memorial fits within this definition. Simply put, Appellant Lutfi and his relatives were going to "see" the Memorial, a "thing regarded as worth seeing." J.A. 1035. Notwithstanding his laudable objective, Appellant Lutfi's trip to the Memorial fits well within the parameters of the term "sightseeing": he went to the Memorial to see a sight of interest. Thus, the RLUS still governs.

C.

Because we conclude the RLUS applies, Appellant Lutfi must establish that the United States was grossly negligent in order to prove his claim. In this regard, Appellant Lutfi argues the district court erred in concluding the evidence was insufficient to permit a reasonable jury to conclude that the United States was grossly negligent. Again, we disagree.

Under Virginia law, gross negligence is defined as "that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. It is a heedless and palpable violation of legal duty respecting the rights of others. Gross negligence amounts to the absence

19

of slight diligence, or the want of even scant care." Frazier v. City of Norfolk, 362 S.E.2d 688, 691 (Va. 1987) (internal quotation marks and citations omitted). Though not dispositive, "[d]eliberate conduct is important evidence on the question of gross negligence." Id. at 801.

Before turning to the facts in this case, we first analyze Virginia's leading cases applying this standard in the context of the RLUS. First, in Frazier, a plaintiff was injured when he fell from an orchestra pit at a concert hall in Norfolk, Virginia. At the time of the injury, there was a gap between the rear of the orchestra pit and the front of the stage. There were no railings or other barriers to protect against this kind of an incident, and the absence of those protective devices amounted to a violation of city code. Moreover, two years before the incident in question, a child had fallen from the same orchestra pit even when protective barriers had been in place.

Despite this evidence, the Supreme Court of Virginia concluded the city's actions constituted, at most, ordinary negligence. Frazier, 362 S.E.2d at 691 ("Such acts of omission do not rise to that degree of egregious conduct which can be classified as a heedless, palpable violation of rights showing an utter disregard of prudence."); see also City of Lynchburg v. Brown, 613 S.E.2d 407 (Va. 2005) (concluding that the failure to

20

correct an open and obvious hazard in a set of bleachers was not gross negligence).

The Virginia Supreme Court reached the opposite conclusion in Chapman v. City of Virginia Beach, 475 S.E.2d 798 (1996). In Chapman, a child died after becoming entrapped in a swinging gate made of metal bars. The evidence in that case demonstrated the gate had been broken for several months prior to the incident. The evidence also showed that city employees had been notified at least three times of this defect, but that the city had made a deliberate decision not to correct it until the peak tourist season had concluded. On this evidence, the Supreme Court concluded, "reasonable persons could differ upon whether the cumulative effect of these circumstances constitutes a form of recklessness or a total disregard of all precautions, an absence of diligence, or lack of even slight care[,]" and reversed the trial court's grant of summary judgment in favor of the city. Chapman, 475 S.E.2d at 801.

Appellant Lutfi argues that this case bears more resemblance to Chapman than Frazier and, accordingly, the district court should have submitted the question of gross negligence to a jury. In making this argument, Appellant Lutfi cites the following facts: although the United States contracted with several independent parties for the construction and maintenance of the Memorial, all parties agree the United States

21

retained exclusive control over the lighting in the Memorial's parking lot.  See J.A. 716.  According to the declaration of Steven Carter, the building manager at the Memorial, he would have been immediately notified if the illumination in the Memorial parking lot was low.  See id.  Similarly, Mr. Carter asserts that, had he been so notified, he would have placed a service call to have the defective lighting repaired.  Once such a call was placed, Mr. Carter avers that it would have been documented in a computerized maintenance management system known as "Maximo."  According to Mr. Carter, the Maximo system contains a record of a service call to replace some of the lights in the Memorial parking lot on October 27, 2006.  Mr. Carter further testifies, however, that those records also indicate that the work was completed later that same day.

Appellant Lutfi disputes this testimony, asserting (a) the lights were out on the evening of his accident and (b) other evidence in the Maximo records undermines Mr. Carter's conclusion that the lights were repaired on October 27, 2006, namely that the relevant work order was not "closed" until March 21, 2007.  Resolving all disputes in Appellant Lutfi's favor, we will assume, for purposes of this appeal, that the lights were out on October 27, 2006 and that they had not been repaired by the time of Appellant Lutfi's visit on November 17, 2006.

On these facts, it is clear that Appellant Lutfi's reliance on Chapman to support his claim that the United States was grossly negligent is inapposite; rather, this case is more akin to Frazier. Here, unlike Chapman, there is no evidence that the United States made a deliberate decision to ignore the allegedly dangerous conditions that were present in the parking lot, nor is there any evidence that the United States consciously disregarded these conditions. At most, the evidence establishes that the United States was aware that the lights were out in the parking lot for approximately two weeks before the incident and that the United States had taken some unsuccessful steps to correct the issue. Though this might amount to ordinary negligence, it does not amount to the sort of "egregious conduct" or "utter disregard of prudence" necessary to establish gross negligence under Virginia law. Accordingly, the district court did not err in concluding that a reasonable jury could not find that the United States was liable to Appellant Lutfi.

IV.

For these reasons, the judgment of the district court is

AFFIRMED.

23