Present:  All the Justices

LINDA CHAPMAN, ET AL.

v.  Record No. 951969          OPINION BY JUSTICE ELIZABETH B. LACY
                                      September 13, 1996

CITY OF VIRGINIA BEACH

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                     Thomas S. Shadrick, Judge


    In determining whether the trial court properly set aside a jury verdict and entered judgment in favor of the City of Virginia Beach in this wrongful death action, we consider issues relating to public nuisance, operation of a recreational facility, admission of expert testimony, gross negligence, and contributory negligence.

    On December 15, 1991, Linda Chapman took her three children to the oceanfront Breakers Hotel in the City of Virginia Beach to visit relatives who were renting an apartment in the Hotel. Eight-year-old Missy and her three-year-old sister, Carolyn, went unaccompanied down to the boardwalk to play. Mrs. Chapman watched Missy and Carolyn from a window in the apartment. She saw Carolyn sitting on top of a section of a gate mounted on the boardwalk railing. Missy was pushing the gate section so that it would swing while Carolyn sat on it.

    The gate was constructed by the City to allow maintenance vehicles to access the beach from the boardwalk. In its normal condition, the gate consisted of two sections, each hinged on one end to the boardwalk railing and fastened together on the other end with a metal latch. Each gate section had two nearly

horizontal metal bars which tapered from their widest point at the boardwalk railing to the middle where the sections met. Sometime prior to October 1991, one section of the gate, the south section, had broken from its hinges and lay in the sand below the boardwalk. The other section of the gate, the north section, remained secured at one end to the boardwalk railing. Missy was pushing Carolyn on the north section of the gate as it swung from the boardwalk over the sand.

At some point, Missy's head became entrapped between the two metal bars in the north section of the gate. When the gate swung out over the sand, Missy's feet could not touch the ground and she was left hanging by her neck. A jogger discovered Missy and notified a nearby hotel clerk. The hotel clerk attempted to resuscitate Missy, and the rescue squad was called. Missy was transported to the hospital but had suffered severe brain damage. Two days later, on December 17, 1991, Missy was pronounced dead.

Missy's parents, Linda and Donald Chapman, as co-administrators of Missy's estate, filed a wrongful death action against the City, alleging simple negligence, gross negligence, and nuisance. The trial court struck the nuisance count and held that, pursuant to Code § 15.1-291, the City was only liable for gross negligence. The trial court also granted the City's contributory negligence instruction with regard to Linda Chapman.

The jury returned a $300,000 verdict in favor of Missy's father only and $18,618.79 for funeral expenses and medical

bills.  The City filed a motion to set aside the jury verdict, arguing that, as a matter of law, the evidence was insufficient to establish gross negligence.  The trial court granted the City's motion and entered judgment in favor of the City.

The Chapmans appealed, assigning error to the trial court's actions in striking the nuisance count, holding that the boardwalk was a recreational facility requiring a showing of gross negligence to impose liability on the City under § 15.1-291, holding as a matter of law that the evidence was insufficient to prove gross negligence, failing to set aside the verdict because it did not compensate all the statutory beneficiaries, and granting the contributory negligence instruction regarding Linda Chapman.  The City assigned cross-error to the admission of certain expert testimony.  We awarded an appeal on all assignments of error and the assignment of cross-error.

## I.  RECREATIONAL FACILITY

The trial court held that the boardwalk is a recreational facility and therefore, pursuant to § 15.1-291,[1] the City could

---

[1]Section 15.1-291 states:

No city or town which shall operate any bathing beach, swimming pool, park, playground, skateboard facility, or other recreational facility shall be liable in any civil action or proceeding for damages resulting from any injury to the person or property of any person caused by any act or omission constituting simple or ordinary negligence on the part of any officer or agent of such city or town in the maintenance or operation of any such recreational facility.  Every such city or town shall, however, be liable in damages for the gross or wanton negligence of any

- 3 -

only be liable for acts which constituted gross negligence.  The Chapmans assert that this was error because the boardwalk is a street or a sidewalk, not a recreational facility.  We disagree with the Chapmans.

The boardwalk is an area which stretches along a considerable portion of the City's beach.  It is designed for recreational use, whether to access the beach itself or as a promenade for walking along the beach.  Neither assigning the maintenance responsibility to the City's department of highways nor allowing vehicles to drive on the boardwalk to perform their maintenance functions transforms the nature of the facility from a place of recreation to a street.  Accordingly, we will affirm the trial court's holding that the boardwalk is a recreational facility as that term is used in § 15.1-291.

## II.  GROSS NEGLIGENCE

The Chapmans next complain that the trial court erred in setting aside the jury verdict based on its holding that, as a matter of law, the actions of the City did not constitute gross negligence.  Gross negligence has been described as the "utter disregard of prudence amounting to complete neglect of the safety

---

of its officers or agents in the maintenance or operation of any such recreational facility.

(continued. . .)

(. . .continued)

The immunity created by this section is hereby conferred upon counties in addition to, and not limiting on, other immunity existing at common law or by statute.

of another." Frazier v. City of Norfolk, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987). "It is a heedless and palpable violation of legal duty respecting the rights of others" which amounts to the "absence of slight diligence, or the want of even scant care." Town of Big Stone Gap v. Johnson, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945) (citations omitted). Several acts of negligence which separately may not amount to gross negligence, when combined may have a cumulative effect showing a form of reckless or total disregard for another's safety. Kennedy v. McElroy, 195 Va. 1078, 1082, 81 S.E.2d 436, 439 (1954). Deliberate conduct is "important evidence on the question of gross negligence." Id. Whether gross negligence has been established is usually a matter of fact to be decided by a jury.[2] Frazier, 234 Va. at 393, 362 S.E.2d at 691.

In reviewing the action of the trial court here, the Chapmans, having received a favorable jury verdict, are entitled to the benefit of all substantial conflicts in the evidence and all fair inferences which can be drawn from the evidence. Mann v. Hinton, 249 Va. 555, 557, 457 S.E.2d 22, 23 (1995). The jury verdict should be reinstated if there is any credible evidence to

---

[2]The City also argues that it cannot be held liable because the injury was not foreseeable and it had no duty to keep the gate closed. These arguments are unpersuasive in this case. No foreseeability instruction was offered and the City raised no objection and, the City need not foresee the precise nature of the injury, only that some injury might probably result. See Panousos v. Allen, 245 Va. 60, 66, 425 S.E.2d 496, 499–500 (1993).

support it.  Id.

The record in this case shows that all the gates on the boardwalk, like the gate in issue, were supposed to be kept closed except when city personnel opened them to perform maintenance tasks.  William Lonnie Gregory, supervisor of the city department in charge of maintaining the gate, was informed on at least three occasions prior to Missy's accident that the gate was broken.  These reports were made by Wayne Lee Creef, the employee charged with inspecting and reporting maintenance problems in the resort area of the City.  The first report followed an event called the Neptune Festival, an event held at the end of September.  A second oral report was made in October.  In the early or middle part of November, Creef again reported the broken gate.  He put this report in writing, "assuming that it was going to be a work order put into effect."

Gregory had the authority to schedule and initiate repair of the gate but did not direct that any immediate action be taken in response to Creef's reports.  Gregory made a deliberate decision not to order that the gate be repaired or that the north section be secured at the time the reports were made because "most of the maintenance work that [the City does] on the boardwalk is done in the spring prior to the tourist season."

Based on this record, we conclude that the trial court erred in setting aside the jury verdict.  The accident occurred in an area constructed and maintained by the City as a recreational

facility.  The purpose of such an area is to attract visitors of all ages to come to and enjoy the facility, in this case, the beach and boardwalk.  Under the City's own operating procedures, the gates were to be closed unless City employees were performing maintenance functions.  Despite repeated notices by its own employee, the City did not take any action.  The decision not to take any action was deliberate.  On this record, reasonable persons could differ upon whether the cumulative effect of these circumstances constitutes a form of recklessness or a total disregard of all precautions, an absence of diligence, or lack of even slight care.  Accordingly, the issue was properly submitted to the jury, there was credible evidence to support the jury verdict, and the trial court erred in setting aside the jury verdict.  This determination does not end the matter, however; we next consider the City's assignment of cross-error.

### III.  EXPERT TESTIMONY

The City contends that the trial court erred when it admitted the expert opinion testimony of Shelly Deppa.  Deppa was offered as a "human factors psychologist" and testified that the physical properties, configuration, and unsecured condition of the gate section created a hazard and that it was reasonably foreseeable that a child's head could become entrapped in the gate section.  The City maintains that this testimony did not assist the trier of fact and should not have been admitted as expert opinion testimony.  We agree.

It was within the common knowledge of the jury that the area was a recreational area that attracted children and the evidence introduced at trial showed the size of the opening between the two metal bars in the gate section. Whether the condition of the gate section created a dangerous condition and whether it was reasonably foreseeable that an injury could occur as a result of the gate's condition were issues within the range of common experience. The admission of expert testimony is inappropriate for matters of common experience. Board of Supervisors v. Lake Servs., Inc., 247 Va. 293, 297, 440 S.E.2d 600, 602 (1994).

In light of this holding, the case must be remanded for a new trial. While it is not necessary to address whether the verdict incorrectly was limited to recovery by the father, two other issues raised by the Chapmans may arise on remand and, therefore, we will address those assignments of error.

IV. NUISANCE

Count IV of the Chapmans' motion for judgment asserted a cause of action based on nuisance. Following conclusion of the evidence, the trial court struck this count, and submitted the case to the jury solely on the negligence count. The trial court concluded that the failure to properly maintain the gate, the basis for the negligence count, also was the basis for the nuisance count. Thus, the trial court held, the nuisance count actually was a negligence cause of action. The Chapmans assert that this was error and we agree.

Negligence and nuisance are distinct legal concepts.  A cause of action for public nuisance is based on a claim of injury resulting from a condition which is dangerous to the public. Taylor v. City of Charlottesville, 240 Va. 367, 372, 397 S.E.2d 832, 835 (1990).[3]  While negligent acts may give rise to the dangerous condition, the acts themselves do not constitute a nuisance.

Contrary to the trial court's conclusion that the reliance on negligent acts defeated the nuisance count, we conclude that a finding of negligence is one of the two alternative prerequisites required to impose liability on a city in a nuisance cause of action.  Cities can be held liable for damages resulting from a nuisance only if the condition claimed to be a nuisance was not authorized by law or the act creating or maintaining the nuisance was negligently performed.  Taylor, 240 Va. at 373, 397 S.E.2d at 836; City of Virginia Beach v. Virginia Beach Steel Fishing Pier, Inc., 212 Va. 425, 427, 184 S.E.2d 749, 750-51 (1971).  Reliance on negligent acts under these circumstances does not transform the nuisance cause of action into a negligence cause of action. Accordingly, the trial court erred in striking the Chapmans' nuisance count on the ground that the alleged negligence precluded a nuisance count.

[3]Although the City argued that the gate was not "dangerous and hazardous in itself" and that the gate "simply" was not a nuisance, it did not assign error to the trial court's failure to dismiss the nuisance count because, as a matter of law, the gate did not constitute a public nuisance.

The City also argued that § 15.1-291 applies to any negligence associated with the maintenance or operation of a recreational facility and thus is applicable to actions for nuisance. The trial court did not expressly rule on this issue. Under these circumstances, the issue is not ripe for resolution in this appeal, and we decline to address the City's argument in this regard.

### V.  CONTRIBUTORY NEGLIGENCE

Finally, the Chapmans assign error to a jury instruction regarding contributory negligence. The City argues that it was entitled to the instruction because Mrs. Chapman was negligent when she allowed the children to play unsupervised without protection or any means of rescuing them from harm. She saw her children swinging on the gate and neither attempted to stop them nor to secure the gate. Therefore, the City concludes that, based on this evidence, the jury was entitled to determine whether Mrs. Chapman was contributorily negligent. We disagree.

A parent has a duty to exercise ordinary care for the child's safety, City of Danville v. Howard, 156 Va. 32, 36, 157 S.E. 733, 735 (1931), but this duty does not impose an absolute requirement that a parent oversee and guide a child's activities every moment. Thus, in a case in which a seven-year-old child was killed darting across a highway to his mother after a school bus passed, we rejected "out of hand" the contention that a contributory negligence instruction was supported by the

evidence, stating that "[t]he law does not impose upon parents the absolute duty to provide children . . . with escort service to and from a school bus stop." Bickley v. Farmer, 215 Va. 484, 488, 211 S.E.2d 66, 69 (1975). Similarly, we rejected a claim that a mother was contributorily negligent when her eleven-year-old son was struck by a truck unloading coal, because she failed to keep the boy in the house during the unloading of the coal. P.L. Farmer, Inc. v. Cimino, 185 Va. 965, 971, 41 S.E.2d 1, 4 (1947).

The evidence in this case is also insufficient to support an instruction on contributory negligence. The record shows that the Chapmans were frequent visitors to the Breakers. Mrs. Chapman's aunt and uncle had lived in an apartment in the Breakers from September through April each year for a number of years. Mrs. Chapman went there "at least two or three times a week" to prepare meals and visit and took her children with her. During these visits, Missy and Carolyn often played on the boardwalk and were familiar with it.

The record also reflects that on the day of the accident, Mrs. Chapman was watching her daughters from a window of the apartment. She saw them feeding the sea gulls and saw Missy pushing Carolyn on the gate. She turned away for "just a couple of minutes" and, when she looked back, she saw a man, the hotel clerk, standing with Missy. Fearing that Missy would be kidnapped or otherwise harmed, Mrs. Chapman screamed and ran out

of the building to the boardwalk.  The jogger who found Missy testified that only a "couple of minutes" passed between the time she saw Missy and returned to the gate with the hotel clerk.

Mrs. Chapman did not have an absolute duty to stand next to her eight-year-old daughter every moment.  Missy was familiar with the area and Mrs. Chapman's supervision of her was reasonable under the circumstances.  Accordingly, we find that the evidence does not support a contributory negligence instruction.

For the foregoing reasons, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>