Present:  Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and
Agee, JJ., and Compton, S.J.

CITY OF LYNCHBURG                          OPINION BY
                              SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 042069                    June 9, 2005

JUDY BROWN

              FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                      J. Leyburn Mosby, Jr., Judge

     Code § 15.2-1809 creates immunity from liability for

ordinary negligence when a city is sued for personal injury

damages resulting from the maintenance of any park or

recreational facility.  The statute provides, however, that a

city shall be liable for gross negligence in the maintenance

of such an area.

     The sole question presented in the appeal in this civil

action is whether the trial court erred by refusing to rule as

a matter of law that a city was free of gross negligence under

the facts of this case.

     On October 15, 2001, appellee Judy Brown was injured when

she fell from a spectator bleacher at Blackwater Creek

Athletic Park, maintained and operated by appellant City of

Lynchburg.  She brought this action against the City alleging

it was grossly negligent in failing to maintain the bleacher

in a safe condition.

     Following a jury trial, the court entered judgment on a

verdict in favor of the plaintiff in the amount of $37,500.00.

We awarded the City this appeal to consider the foregoing issue.

There is little dispute in the evidence. Where there is conflict and according to settled appellate principles, we shall consider the facts in the light most favorable to the plaintiff, who comes to this Court armed with a jury verdict approved by the trial judge.

The City operates 17 parks covering about 850 acres. One of the parks is the 20-acre Blackwater Creek Athletic Park, which includes a lighted softball field.

The bleacher in question was situated along the third base line of the ball field and was designed to seat about 30 people. The bleacher was free-standing and composed of five aluminum "risers" used for seating. Each riser was about 12 inches wide and approximately 18 feet long. Beneath the four uppermost risers were metal strips about six inches wide used as foot rests.

On the day of the accident, the plaintiff was at the Park in "the evening" attending a softball game in which her daughter was participating. "[I]t was dark at that time and the lights were on."

The plaintiff had "walked over to the bleachers . . . went up the bleachers" and "sat on the next-to-top seat" to talk with a friend. After some time, the plaintiff "got up

2

from the middle part of the bleachers . . . , walked down the bleachers sort of diagonally" to her left, "got to the very last seat on the bleacher, . . . stepped on it and slipped and fell off the bleacher."

A light pole was casting a shadow across the bleachers and the plaintiff stepped into that shadow. She said: "I could see the step, but . . . what I thought was a whole step ended up not being a whole step. I could see part of that step; I just assumed all of it was there."

A player's parent and a coach described the condition of the riser prior to the time the plaintiff fell. The parent said: "The seating part of the bleachers was bent down on the ends, and the walk boards were the same way . . . ." The coach said "that the ends of [the risers] were jagged, the end caps were missing . . . ."

The evidence was uncontradicted that the City did not have actual notice of the damaged bleacher seat. Due to the number and size of the City's recreational facilities, it did not have employees who worked full time at this Park. Nonetheless, workers would regularly report to the Park, perform "litter policing," grass cutting and trimming, and leaf disposal, and then leave. On the day of the accident, four employees were at the Park for 20 man-hours performing

various tasks, including litter removal, and did not notice the bent bleacher.

The City had a policy of recording reports of damage to City property or equipment. Any employee who observed a safety hazard or damage to City property was required to report it so the deficiency could be corrected. No complaints of damage to the bleacher were recorded or reported prior to the incident in question from citizens, employees, or anyone else.

City employees testified, observing photos taken after the accident, that if the damaged bleacher had been noticed prior to the accident, the hazard should have been reported so that it could have been repaired. The City agreed that the damage "was open and obvious."

On appeal, the plaintiff argues the trial court correctly decided that a jury question was presented on whether the City was guilty of gross negligence. She notes the City "conceded" a jury could have found on these facts that it should have known of the damaged bleacher. And, she challenges the City's position that only actual, not constructive, knowledge will support a finding of gross negligence.

In effect, the plaintiff contends that a finding of constructive notice will support such a finding. She says, "even when the defendant does not admit to seeing what was

'open and obvious,' under the other circumstances of the case, it can be found to be grossly negligent for reckless failure to see what it should have seen."

Alternatively, the plaintiff argues that "[o]n these facts, a jury could find actual knowledge," because the evidence placed City employees "on, around, and under the bleacher" during a six-month period before the incident.

We disagree with the plaintiff's contentions. The parties debate the applicability of two cases dealing with accidents at municipal recreational facilities. The plaintiff relies upon Chapman v. City of Virginia Beach, 252 Va. 186, 475 S.E.2d 798 (1996), while the City argues that Frazier v. City of Norfolk, 234 Va. 388, 362 S.E.2d 688 (1987), controls. We agree with the City; this is a Frazier case.

In Frazier, a minor was injured when he fell from the rear of an orchestra pit to the basement in Norfolk's Chrysler Hall. At the time, a gap existed between the rear of the pit and the front of the stage. No barriers or railings were in place on the rear perimeter of the pit platform.

The city was in violation of its own building code because railings were not in place on the pit platform. Additionally, the evidence showed that the city possessed barriers specifically designed to provide protection against falls from the pit. Also, two years prior to the incident, a

5

child had fallen from the pit to the basement when barriers were in place.

This Court affirmed the trial court's action in striking the plaintiff's evidence. We held there was a failure to establish a prima facie case of gross negligence. Id. at 393, 362 S.E.2d at 691.

In that case, we defined "gross negligence" as "that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. It is a heedless and palpable violation of legal duty respecting the rights of others." Id. (internal quotations and citation omitted). It is want of even scant care and amounts to the absence of slight diligence. Id.

We decided that the "city's failure to install protective devices or to post warnings at a platform edge which was open and obvious amounts, at the most, to ordinary negligence and a failure to exercise reasonable care. Such acts of omission do not rise to that degree of egregious conduct which can be classified as a heedless, palpable violation of rights showing an utter disregard of prudence." Id.

In contrast, the Court in Chapman reversed a trial court's action in setting aside a verdict for the plaintiff in a wrongful death action arising from an accident on the boardwalk at Virginia Beach. The Court held the issue of

gross negligence was properly submitted to the jury. 252 Va. at 191, 475 S.E.2d at 801.

In that case, a child died after becoming entangled in a swinging gate made of metal bars which provided access to the beach from the boardwalk. The evidence showed that one section of the two-section gate had been broken for at least two months before the incident and lay in the sand. This allowed the standing section to swing freely, contrary to its normal position of being latched closed and fastened to the other section. Id. at 188, 475 S.E.2d at 799-800.

City employees had been notified on at least three occasions prior to the incident that the gate was broken, but the gate was not repaired. A supervisor in charge of maintaining the gate made a "deliberate decision" not to order the gate repaired or secured at the time the reports were made in the fall because most of the City's maintenance on the boardwalk " 'is done in the spring prior to the tourist season.' " Id. at 191, 475 S.E.2d at 801.

In discussing the standard of care, we said: "Deliberate conduct is important evidence on the question of gross negligence." Id. at 190, 475 S.E.2d at 801 (internal quotations and citation omitted). We pointed out: "Under the City's own operating procedures, the gates were to be closed unless City employees were performing maintenance functions.

7

Despite repeated notices by its own employee, the City did not take any action.  The decision not to take any action was deliberate."  Id. at 191, 475 S.E.2d at 801.

We concluded that "reasonable persons could differ upon whether the cumulative effect of these circumstances constitutes a form of recklessness or a total disregard of all precautions, an absence of diligence, or lack of even slight care."  Id.

In the present case, unlike Chapman, there is no evidence of deliberate conduct by municipal employees or of a total disregard of all precautions by them.  In this case, like Frazier, the hazard was open and obvious, and municipal employees committed acts of omission by failing to observe the damaged bleacher.  This conduct amounted to ordinary negligence and a failure to exercise reasonable care.  It did not, however, rise to that degree of egregious conduct classified as a heedless, palpable violation of rights showing an utter disregard of prudence.

Certainly, as the plaintiff argues, a jury could have found that the City should have known of the hazardous bleacher.  But, under these facts, that is insufficient, standing alone, to present a jury issue on gross negligence. And, we reject the plaintiff's alternative contention that a jury could find that the City had actual knowledge of the

defective bleacher.  Reasonable persons would have had to speculate to reach such a conclusion.

Consequently, we hold that the trial court erred in refusing to rule as a matter of law that the plaintiff failed to establish the City was guilty of gross negligence.  Thus, we will reverse the judgment appealed from and will enter final judgment here in favor of the City.

<u>Reversed and final judgment</u>.