COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chaney, Callins and White
Argued at Alexandria, Virginia

ANGELO J. CARMELLO, JR.,
 ADMINISTRATOR OF THE ESTATE OF
 LINDSEY CARMELLO

v.      Record No. 1818-22-4

KELLY MARIE ADAMS COCKERILL, A/K/A           MEMORANDUM OPINION* BY
 KELLY COCKRILL, ET AL.                       JUDGE VERNIDA R. CHANEY
                                                   JUNE 18, 2024
ANGELO J. CARMELLO, JR.

v.      Record No. 1819-22-4

KELLY MARIE ADAMS COCKERILL, A/K/A
 KELLY COCKRILL, ET AL.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Brien A. Roche (Johnson & Roche, on briefs), for appellant.

James M. Snyder; J. Matthew Haynes, Jr. (Megan N. Watson; Jeffrey
R. Donofrio; McCandlish Holton, P.C., on brief), for appellees.


A tree fell on Angelo J. Carmello, Jr.'s car while he and his daughter, Lindsey, were driving.

The tree was a natural growth on Kelly Cockrill and Marilyn Adams' property.  Angelo was

seriously injured, and Lindsey died.  Angelo sued Cockrill and Adams in tort for personal injury and

wrongful death, but Cockrill and Adams argued that they had no duty to prevent the tree from

harming Angelo and his daughter.  The circuit court agreed with Cockrill and Adams, granted their

demurrer, and dismissed the suit with prejudice.  On appeal, Carmello argues that the circuit court

erred by: (1) relying on *Cline v. Dunlora South, LLC*, 284 Va. 102 (2012), rather than the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

common law of England, to find no duty running from Cockrill to Carmello; (2) not recognizing that Code § 33.2-801 and Loudoun County Ordinance §§ 648.04 and .03 should be read to impose a common-law duty or that they create a privately enforceable duty; and (3) failing to treat Carmello's negligence and nuisance claims as legally distinct. Finding no error, this Court affirms the judgment of the circuit court.

BACKGROUND

Angelo J. Carmello, Jr. and his daughter, Lindsey Carmello (collectively, Carmello), drove on Route 611 in Loudoun County to attend a school event. On the way, they passed property owned by Kelly Cockrill and Marilyn Adams (collectively, Cockrill).[1] A tree from that property fell onto Carmello's car, causing severe injuries to Angelo and killing Lindsey.

Carmello filed lawsuits against Cockrill for wrongful death and personal injury. He claimed that the tree on Cockrill's property was an obvious threat to motorists on the road, that it was rotting and had been in danger of falling for years before the accident, and that it needed to be repaired or removed. Carmello argues, therefore, that Cockrill's failure to address the danger caused the accident, injury, and death. In his amended complaint, Carmello asserted theories of negligence, gross negligence, negligence per se, and nuisance. Cockrill demurred, arguing that she had no duty to prevent the tree from falling into the roadway and causing harm. She maintained that the tree was a natural growth on her property and, therefore, Virginia law imposed no duty to regularly monitor, inspect, or repair the tree regarding any of Carmello's negligence and nuisance claims.

---

[1] Carmello filed two suits, wrongful death as the administrator of Lindsey's estate, Record No. 1818-22-4, and personally for negligence, Record No. 1819-22-4. Kelly Cockrill (misspelled as Cockerill) and Marilyn Adams (formerly Marilyn Adams Jarvis) are sisters who demurred separately from each other and in each action. But the arguments and circuit court rulings are the same across each docket and as to all parties. This Court therefore consolidated the cases for appeal. *See Carmello v. Cockrill*, Nos. 1818-22-4 and 1819-22-4 (Jan. 6, 2023) (order). For simplicity, this Court refers to the plaintiff-appellants collectively as "Carmello" and defendant-appellees as "Cockrill."

The circuit court sustained the demurrers and dismissed the suits with prejudice. Carmello now appeals.

ANALYSIS

Carmello argues that the circuit court erred in granting a demurrer: first, by relying on *Cline v. Dunlora South, LLC*, 284 Va. 102 (2012), rather than the common law of England incorporated under Code § 1-200 to determine that Cockrill had no legal duty of care; second, by not recognizing a privately enforceable legal duty arising from Code § 33.2-801 and Loudoun County Ordinance §§ 648.04 and .03; and third, by not treating Carmello's negligence and nuisance claims as legally distinct.

This Court finds that *Cline* remains binding Virginia law and, therefore, Cockrill had no common-law duty of care to maintain the tree, that neither Code § 33.2-801 nor Loudoun County Ordinance §§ 648.04 and .03 establish such an enforceable duty, and that the object of Carmello's nuisance claim is indistinguishable from his negligence claims and so also fails for lack of a duty of care.

I. Standard of Review

"A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). "We examine the circuit court's decision to sustain [a] demurrer under a de novo standard of review because it is a pure question of law." *Butler v. Stegmaier*, 77 Va. App. 115, 125 (2023) (alteration in original) (quoting *Wilburn v. Mangano*, 299 Va. 348, 353 (2020)). Likewise, we must review the circuit court's statutory interpretations de novo. *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434-35 (2020).

II. Virginia law does not impose a duty of care on Cockrill to protect nearby motorists from naturally decaying trees on her property.

For Carmello's claims of negligence and gross negligence to survive demurrer, Cockrill must have had a legally recognizable duty to inspect or maintain the tree on her property for the safety of travelers on the nearby public road. The Supreme Court of Virginia in *Cline* held that no such duty exists. 284 Va. at 110 ("[T]his Court has never recognized, nor do our precedents support, a ruling that a landowner owes a duty to protect travelers on an adjoining public roadway from natural conditions on his or her land."). *Cline* stands on facts very similar to ours; there, the plaintiff was driving on a public highway in Albemarle when a tree fell from private property and crushed his car. *Id.* at 104-05. Cline sued the landowner, Dunlora South, LLC, for negligence and nuisance. *Id.* at 105. Dunlora demurred, which the circuit court sustained, and our Supreme Court affirmed after finding no relevant duty of care existed. *Id.* at 104, 110.

Carmello argues, however, that "[t]his Court is not bound by *Cline*," as it did not construe our reception statute, Code § 1-200, as we are asked to do here. Am. Op. Br. at 12. He argues that applying Code § 1-200 would have incorporated English common law that supplies the duty supporting his claims. Carefully tracking the legislative history of Code § 1-200 with comparison to the related Code § 1-201, Carmello argues that English common law—including modern English caselaw—can impose a legal duty on Cockrill. He confronts this Court with whether Code § 1-200 incorporates English caselaw up to the modern day. Carmello argues that the English cases *Noble v. Harrison*, [1926] 2 K.B. 332, and *Caminer v. Northern & London Investment Trust Ltd.*, [1951] A.C. 88, would provide a duty of care for his negligence claims.

Our Supreme Court has addressed the date of incorporation within Code §§ 1-200 and -201 in *Commonwealth v. Morris*, 281 Va. 70, 82 (2011), holding that "our adoption of English common law . . . ends in 1607 upon the establishment of the first permanent English settlement in America, Jamestown. From that time forward, the common law we recognize is that which has been

- 4 -

developed in Virginia." Carmello argues that only the issue of Code § 1-201—which focuses on the incorporation of English writs and statutes—was before the Court in *Morris*, and thus the date of incorporation of English common law under Code § 1-200 remains unanswered. We recognize that *Morris* does not address Code § 1-200, specifically. But subsequent opinions of our Supreme Court and this Court affirmed the determination in *Morris*. *E.g.*, *Bevel v. Commonwealth*, 282 Va. 468, 479 & n.3 (2011) (noting that *Morris* applies to the construction and application of Code §§ 1-200 *and* -201); *Wyatt v. McDermott*, 283 Va. 685, 694 (2012); *Taylor v. Commonwealth*, 58 Va. App. 435, 443-44 (2011).[2]

Moreover, even if there were an applicable early or modern English common-law rule, it could not override current Virginia law under Code § 1-200, which provides that "[t]he common law of England, *insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth*, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." (Emphasis added). Our Supreme Court has read the emphasized text to mean that where there is a conflict between English and Virginia common law, Virginia law controls:

> The true rule is this: "Such of [English common law] doctrines and principles as are repugnant to the nature and character of our political system, or which the different and various circumstances of our country render inapplicable to us, are either not in force here, or must be so modified in their application as to adapt them to our condition." Thus, by statute and case law, we are free, in essence, to adopt from English common law those principles that fit our way of life and to reject those which do not.

---

[2] Recently, in *White v. United States*, 300 Va. 269, 277 n.5 (2021), our Supreme Court suggested without determining that the Fifth Virginia Convention on July 3, 1776, or the General Assembly's enactments in 1792 represent more appropriate dates of adoption for English common law. Yet our Supreme Court did not rule on this matter in *White*. *Id.* We need not make such a determination ourselves because our binding precedent still supports the date of 1607, and even if precedent did not, the alternative suggested dates of 1776 and 1796 still precede Carmello's suggested English common-law cases of *Noble*, [1926] 2 K.B. 332, and *Caminer*, [1951] A.C. 88.

*Weishaupt v. Commonwealth*, 227 Va. 389, 399-400 (1984) (quoting *Foster v. Commonwealth*, 96 Va. 306, 310 (1898)).[3] Therefore, our current Virginia caselaw controls regardless of whether English common law has or ever had a contrary rule.[4]

Carmello nonetheless urges this Court to overturn *Cline* if it is inconsistent with his proposed English common-law rule. Yet a panel of this Court cannot overrule a ruling by our Supreme Court. *See, e.g.*, *O'Malley v. Commonwealth*, 66 Va. App. 296, 301 (2016) ("[W]e are bound by the decisions of the Supreme Court of Virginia and are without authority to overrule [them]." (alterations in original) (quoting *Roane v. Roane*, 12 Va. App. 989, 993 (1991))).[5]

The Supreme Court of Virginia "has never recognized that principles of ordinary negligence apply to natural conditions on land." *Cline*, 284 Va. at 107. Rather, the rule is that one must not

---

[3] Carmello argues that only the General Assembly can modify Virginia common law. However, as our Supreme Court explains, "[Code § 1-200] does not mean that common-law rules are forever chiseled in stone, never changing. The common law is dynamic, evolves to meet developing societal problems, and is adaptable to society's requirements at the time of its application by the Court." *Williamson v. Old Brogue, Inc.*, 232 Va. 350, 353 (1986), *quoted in Cline*, 284 Va. at 106-07.

[4] This includes when there is a conflict with early developments and principles in English common law, such as those studied by Sir William Blackstone (1723-1780) and analyzed by Carmello. Additionally, and for clarification, we are not required to ignore the modern common law of England or of other jurisdictions such as our sister states, but such law is merely persuasive. *See, e.g.*, *Wyatt*, 283 Va. at 697. Moreover, evidence of our adopted English common law may arise through more recent English caselaw, which we apply if it is not in conflict with Virginia law. *E.g.*, *Shirley v. Shirley*, 259 Va. 513, 519 (2000) (holding that the old English common-law principle invalidating a reservation for a third person in a grant of property (the "stranger rule") is incorporated into Virginia law (quoting *Wickham v. Hawker*, [1840] 151 Eng. Rep. 679, 683 (Eng. & Wales))); *see, e.g.*, *Taylor*, 58 Va. App. at 444 ("As many courts have noted, Sir William Blackstone's Commentaries on the Laws of England were accepted by the Founders 'as the most satisfactory exposition of the common law of England.'" (quoting *Schick v. United States*, 195 U.S. 65, 69 (1904))).

[5] This Court recently upheld the dismissal of a negligence suit relying on *Cline* as precedent. *See Yevdokimov v. McDiarmid Assocs.*, No. 1989-22-4 (Va. Ct. App. Nov. 28, 2023). There, the circuit court did not grant Yevdokimov leave to amend a dismissed negligence claim that arose when a naturally decaying tree on McDiarmid's property fell into a roadway and crushed Yevdokimov's car. *Id.*, slip op. at 6-7.

affirmatively use the land in a way that endangers the rights of others. *Cline* explained that a landowner's duty to occupants of a highway adjoining their land "is to refrain from engaging in any act that makes the highway more dangerous than in a state of nature or in the state in which it had been left." *Id.* at 109. For there to be a duty to protect plaintiffs from a tree on their property, defendants had to have put the tree there or made it likely that the tree would fall and hurt people. Mere failure to inspect or maintain, the conduct Carmello alleged, is not enough. The need to distinguish between Cockrill's active and passive conduct is just a specific application of the general tort rule: the law punishes misfeasance, not nonfeasance. *See Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 83-84 (2019).

The same rule applies, even more so, to Carmello's claim of gross negligence. "Gross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.' . . . '*Deliberate* conduct is important evidence on the question of gross negligence.'" *Commonwealth v. Giddens*, 295 Va. 607, 613-14 (2018) (emphasis added) (first quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004); and then quoting *Chapman v. City of Virginia Beach*, 252 Va. 186, 190 (1996)).

Under *Cline* and Virginia law, Cockrill had no duty to inspect or maintain the tree for the safety of Carmello and took no active or deliberate conduct to place the tree or make it more dangerous for passersby. Therefore, the circuit court correctly determined that Carmello did not successfully identify a legal duty in his negligence and gross negligence pleas.

III. Neither Virginia statute nor Loudoun County ordinance enabled Carmello to assert negligence per se against Cockrill.

Carmello next assigns error to the circuit court's failure to read English common law into Virginia's statutory scheme to find a duty of care imposed on Cockrill for his negligence per se claim. A negligence per se action is a subset of negligence where the standard of care derives from

statute. *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 287 (2012). A proper negligence per se cause of action contains seven components:

> [1] [T]he tortfeasor had a duty of care to the plaintiff, [2] the standard of care for that duty was set by statute, [3] the tortfeasor engaged in acts that violated the standard of care set out in the statute, [4] the statute was enacted for public health and safety reasons, [5] the plaintiff was a member of the class protected by the statute, [6] the injury was of the sort intended to be covered by the statute, and [7] the violation of the statute was a proximate cause of the injury.

*Id.* (citing *McGuire v. Hodges*, 273 Va. 199, 206 (2007)). Here, we analyze the first and second components to find that Carmello's negligence per se claim was insufficient.

Carmello cites Code § 33.2-801, a criminal statute, which provides that "[a]ny person is guilty of a Class 1 misdemeanor who . . . [o]bstructs any highway or any ditch made for the purpose of draining the highway," and Loudoun County Ordinance § 648.04, which provides that "[n]o person shall cause, harbor, commit or maintain, or suffer to be caused, harbored, committed or maintained, any nuisance" and defining nuisance in Loudoun County Ordinance § 648.03(g)(6) as including "[h]azards, such as . . . trees or parts thereof in danger of falling . . . ." These, Carmello argues, are the standards of care expected of Cockrill.

"However, a statute setting the standard of care does not create the duty of care." *Steward*, 284 Va. at 286. Carmello first argues that the duty of care comes from the English common law. But as explained earlier, Virginia law places no duty on a landowner to protect passersby from natural conditions on the landowner's land and does not incorporate such a duty from modern English common law. Therefore, the circuit court was correct for not reading such a duty into Virginia and Loudoun County statutes.

Alternatively, Carmello argues that even without a duty from common law, the statutes create a duty. Yet as our Supreme Court has held:

> "[T]he best construction of the statute is, to construe it as near to the reason of the common law as may be, . . . ." The reason is that the Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.

*Wicks v. Charlottesville*, 215 Va. 274, 276 (1974) (quoting *Chichester v. Vass*, 5 Va. (1 Call) 83, 102 (1797)). Again, Virginia common law provides no duty here, and there is no express language or necessary implication in Code § 33.2-801 or Loudoun County Ordinance §§ 648.04 and .03 that the purposes of the statutes were to place a new duty of care on landowners.[6] Thus, the common law is unchanged, and the statutes create no new duty.

Likewise, penal and regulatory statutes do not create a private right of action unless express statutory language declares otherwise. *See, e.g.*, *Vansant & Gusler, Inc. v. Washington*, 245 Va. 356, 359-60 (1993) (explaining that a statute expanding criminal larceny for certain contractor activities did not create a private right of action). Where a statute provides for one type of enforcement remedy—like prosecution or regulatory action—then that remedy presumptively excludes a private right of action. *See id.* at 360. Code § 33.2-801 describes a misdemeanor that is to be charged by a Commonwealth's Attorney, while Loudoun County Ordinance § 648.07 provides the County Administrator or the Director of Public Health with the authority to give notice to abate nuisances. Neither provision contains any express language creating a private right of action.

---

[6] The Virginia Model Jury Instructions Carmello referred to for support in finding a duty in the statutes do not address either Code § 33.2-801 or Loudoun County Ordinance §§ 648.04 and .03, and thus cannot be a source for this express language or necessary implication.

Thus, the circuit court was correct in not reading English common-law duties into Virginia statutory and municipal codes and not creating a new duty or private cause of action from these codes.

IV. Carmello's nuisance claim does not allege distinct facts or legal duties to his negligence claims.

Carmello's final assignment of error alleges the circuit court was mistaken in not considering his nuisance claim as an independent claim. Citing *Sam Finley, Inc. v. Waddell*, 207 Va. 602, 611 (1966), and *Chapman v. City of Virginia Beach*, 252 Va. 186, 193 (1996), as examples, he argues that "[n]usiance is well-defined in the case law" and is distinguishable from the legal concept of negligence. He asserts that the facts as pled support a nuisance claim, particularly as nuisance does not require a duty like negligence.

Though negligence and nuisance are distinct legal concepts, a finding of negligence can coexist with and even form a part of a nuisance claim, where the conduct creating or maintaining the nuisance condition was negligent performance. *See Chapman*, 252 Va. at 192. Yet the nuisance claim cannot be, at its core, a repackaging of a negligence claim. *See Cline*, 284 Va. at 106 n.1; *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 407 (1988) ("[The plaintiff] pled both negligence and nuisance as a basis for liability, but the nuisance allegedly was the result of negligent conduct. We will look to the object of the action, rather than its form, to determine the extent of liability of the defendants."). In either case, negligence must be established if negligent conduct is the foundation for nuisance.

Ultimately, here, *Cline* guides our reasoning in consideration of nuisance as it does with negligence. *Cline* is not distinguishable from the case at hand; an allegedly dead and dying tree next to a public roadway on property owned by the defendant fell and caused serious injuries to the plaintiff. *Cline*, 284 Va. at 105. There, the plaintiff also made both nuisance and negligence claims; however, our Supreme Court determined that "[the plaintiff]'s nuisance claim is based

- 10 -

upon [the defendant]'s alleged conduct, and stands or falls on whether [the defendant]'s alleged conduct was negligent." *Id.* at 106 n.1. Our Supreme Court found no landowner's duty to inspect or maintain trees next to public highways. *Id.* at 107. It also found that nuisance-related duties of a landowner arising from "the encroachment of vegetation onto adjoining improved lands . . . are dramatically different than duties necessary to support an action for personal injury predicated upon a duty of a landowner regarding the natural decline of trees on his or her property, which is adjacent to a roadway." *Id.* at 108.

As in *Cline*, Carmello's "nuisance claim . . . stands or falls on whether [Cockrill]'s alleged conduct was negligent." *See id.* at 106 n.1. Here, even under nuisance, Carmello pled that Cockrill's conduct was to "allow a nuisance to exist 'in the form of a tree.'" Am. Op. Br. at 18. The object of this claim was Cockrill's inaction, which was the foundation for Carmello's claim of negligent misconduct, and thus Carmello must properly plead a duty of care. *See Cline*, 284 Va. at 106 n.1; *Philip Morris*, 235 Va. at 407. As no such duty exists, this negligence-as-nuisance claim was not properly pled, either reformulated or with negligence forming the core of the nuisance.

Regardless of the form of the claim, a public nuisance must exist "at all times and under all circumstances . . . . More than sporadic or isolated conditions must be shown.'" *Breeding ex rel. Breeding v. Hensley*, 258 Va. 207, 213 (1999). Though Carmello argues that the ongoing decay and condition of the tree were sufficient for nuisance, the tree itself presented no hazard on the highway until the isolated moment when it fell. The potential danger of the tree did not become an actual and ongoing danger, as necessary for a nuisance claim under *Breeding ex rel. Breeding*. *See id.*

Finally, Carmello cites Loudoun County Ordinance §§ 648.04 and .03 for the ordinance's definition of nuisance in support of his claim. However, as discussed earlier, these regulatory

statutes do not provide a private enforcement right.  *See, e.g.*, *Vansant & Gusler*, 245 Va. at 359-60; Loudoun County Ordinance § 648.07 (providing the County Administrator or the Director of Public Health with the authority to give notice to abate nuisances).  These statutes thus only provide a standard of care and definition for regulatory enforcement, not any tort duty or civil cause of action.

The circuit court, therefore, did not err in finding that Carmello had no cause of action in nuisance.

CONCLUSION

For these reasons, this Court affirms the circuit court's judgment.

*Affirmed.*